IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 7:22cv00665 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| CPT. GILBERT, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a Virginia prisoner proceeding *pro se*, filed a civil rights action in this court in April 2021, *Williams v. Gilbert*, No. 7:21cv00222. It was subsequently dismissed—and then reopened—on two separate occasions, and it has since been dismissed. The case is currently before the Fourth Circuit on appeal. After one of the earlier dismissals, which occurred after Williams had failed to file his second amended complaint by the court's deadline, the court received from Williams a document he titled as his "second amended complaint." *Williams*, No. 7:21cv00222, ECF Nos. 47, 50. In reopening the case after that dismissal, the court noted that the document in fact contained ten separate complaints. *Williams*, No. 7:21cv00222, ECF No. 50. The court thus severed each of the complaints into a separate case, and this case was created from the complaint Williams had titled "Complaint 2." (*See* Compl., Dkt. No. 1.)

The complaint is now before the court for review, pursuant to 28 U.S.C. § 1915A(a), which requires the court to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted).

For the reasons discussed herein, the court concludes that Williams's complaint fails to state a claim under § 1983 and must be dismissed.

## I. BACKGROUND

Williams's complaint lists five defendants: Captain Gilbert ("Cpt. Gilbert"), Correctional Officers Gilbert ("C/O Gilbert"), Boyd, and Clem, and Sgt. Hill. (Compl. 2–3.) Although not listed in the section setting forth the names of defendants, the complaint also appears to assert a claim against "Unit Manager Eric Miller." (*See id.* at 7.) For purposes of this opinion, the court will treat Miller as a defendant.

Williams alleges that he began a hunger strike on November 9, 2019, while housed in the Restrictive Housing Unit ("RHU") at Red Onion State Prison ("Red Onion"). (*Id.* at 3.) He began the strike to "peacefully protest" what he deemed to be "unconstitutional treatment." Specifically, he says he was protesting officers tampering with his mail, his being denied access to the "STARS program," and Red Onion staff conspiring with inmates to commit fraud and steal the proceeds of a lawsuit settlement to which he was entitled. (*Id.*)

On the third day of his hunger strike, Williams alleges that after he refused his dinner tray, the feeding officer and defendant Sgt. Hill attempted to coerce him to accept it, telling Williams that his hunger strike was requiring them to complete paperwork and making their job harder. (*Id.* at 4.) Within a half hour of that conversation, C/O Gilbert came by Williams's cell, accompanied by defendants Boyd and Clem, and asked if Williams wanted the dinner tray. Williams said, "No," and began to shake his head no, but C/O Gilbert opened the tray slot and threw the tray on the floor of the cell. The other two officers "formed a blockade to obscure the view of the camera" while this occurred. C/O Gilbert, Boyd, Clem and the original feeding officer then falsified state documents by recording that Williams had accepted the tray. (*Id.*)

Later than evening, Williams submitted an emergency grievance complaining of ailments

resulting from his hunger strike, and a sergeant came to take him to medical.[1] Before he was transported, Williams pointed out to the sergeant that there was a tray and food on the floor, which the officer helping to place Williams in restraints had to push out of the way. (*Id.* at 5.) While in medical, Williams refused the "Boost" drink offered to him by the nurse. Later, Williams showed the food and tray in his cell to other supervisory personnel, and he notified Cpt. Gilbert of the incident. Cpt. Gilbert stated, "Well, if you ate at lunch I don't see what's the problem." (*Id.*)

    Williams describes his legal claims as follows:

    (1) Defendants Sgt. Hill, C/O Gilbert, Boyd, and Clem violated his First Amendment right to engage in a hunger strike;

    (2) The same defendants violated his Eighth Amendment rights and due process rights under the Fourteenth Amendment, by violating a VDOC Operating Procedure, when they threw his tray of food on the floor, and failed to document the hunger strike.

(*Id.* at 6.) Although he does not explain how, Williams he states that he experienced "pain, suffering, emotional distress, and . . . physical injuries and financial loss due to these officers['] failure to follow protocol." (*Id.*) He also faults several supervisory officers, including Unit Manager Eric Miller and Cpt. Gilbert, for their failure to "correct" the other officers' conduct or for encouraging their actions. (*Id.* at 7.)[2] He does not offer any additional factual detail in support of his claims against Miller or Cpt. Gilbert.

---

    [1] Williams identifies the sergeant as Sgt. Williams, and he later identifies another individual as "Lt. Williams," neither of whom are named as defendants. (Compl. 5.) The court presumes there is no relation between plaintiff and these individuals, despite sharing the same last name.

    [2] Within the sections describing why Miller and Cpt. Gilbert should be held liable, Williams references other alleged misconduct that is not part of this particular complaint but instead pertains to his claims in others of the severed cases.

3

II.  DISCUSSION

The court reviews Williams's claims pursuant to 28 U.S.C. § 1915A(a), which requires the court to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted).  Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court.  *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (citation and internal quotation marks omitted).  Williams's allegations fail to state a § 1983 claim against any of the defendants.

**A.  Supervisory Liability**

Williams's claims against two of the defendants—Miller and Cpt. Gilbert—are premised on their alleged failure to correct the conduct of their subordinates.  His sparse supporting allegations, however, fail to state a viable claim of supervisory liability under the governing standard.  *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (setting forth required elements for a claim of supervisory liability) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).  To state such a claim, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his

4

> subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372-74 (4th Cir. 1984) (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

To adequately plead the first element, a plaintiff must allege "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d at 226 (internal quotation marks omitted). With respect to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). As to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (internal quotation marks omitted).

Williams does not allege any other incidents by the subordinate officers of a similar nature or any facts to show that Miller or Cpt. Gilbert should have known of a widespread problem of officers either throwing food trays in prisoners' cells or falsely stating that a prisoner took a tray when he was engaged in a hunger strike. Absent allegations to establish that either defendant had knowledge of an unreasonable risk of harm of constitutional injury, Williams has failed to state a supervisory claim against them. The court will thus dismiss all claims against those two defendants.

## B. First Amendment Claim Alleging Interference with Hunger Strike

Although Williams alleges that defendants violated his First Amendment rights, his complaint does not set forth facts to show a constitutional violation. The court assumes—without deciding—that Williams's hunger strike constituted protected First Amendment activity. *See Stefanoff v. Hays Cnty.*, 154 F.3d 523, 527 (5th Cir. 1998) ("[A] hunger strike may be protected by the First Amendment if it was intended to convey a particularized message.") (citing *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). But to violate that First Amendment right, a defendant must interfere with the activity, and Williams fails to allege sufficient facts to show any defendant interfered or actually forced him to abandon his hunger strike. To the contrary, he claims that he did not take other trays and declined a "Boost" from the nurse.

Notably, Williams does not allege that anyone forced him to eat the food from the tray thrown on his cell floor during his strike or that he did, in fact, eat. Williams also fails to explain how the mere fact that defendants incorrectly or falsely filled out paperwork stating he took a tray interfered in any way with his ability to continue his hunger strike as a form of expression. Nothing about that forced him to keep eating or to end his hunger strike, and he was free to continue to refuse meals. In short, he simply has not alleged that defendants interfered with his "speech" in the form of a hunger strike. Indeed, his allegations stand in stark contrast to cases where prison officials ended a hunger strike by force-feeding an inmate, and even that practice has been upheld in many cases. *E.g.*, *Grand Jury Subpoena John Doe v. U.S.*, 150 F.3d 170, 172 (2d Cir. 1998) (upholding order allowing force-feeding of a civil contemnor and noting that a "majority of courts that have considered the question" have held that a force-feeding order "does not violate a hunger-striking prisoner's constitutional rights"); *Aamer v. Obama*, 742 F.3d 1023, 1041 (D.C. Cir. 2014) (declining to enjoin jailers at Guantanamo Bay detention center from force-feeding hunger-striking detainees); *see also Stefanoff*, 154 F.3d at 527 (holding that a

prison official's refusal to grant good time credit in retaliation for engaging in a hunger strike was not a violation of the plaintiff's First Amendment rights because prison officials are accorded latitude in fashioning restrictions on time, place, and manner of communications and such restrictions are reasonably related to a legitimate penological interest). *But cf. Aamer*, 742 F.3d at 1040 (recognizing that "a handful of state appellate courts have rejected prison officials' attempts to force-feed particular inmates," but most were "applying state law" and faced "unique factual circumstances"). In short, the court cannot find that Williams has stated an adequate First Amendment claim against any defendant.[3]

## C. Eighth Amendment Claim

It is unclear to the court exactly what actions by any defendants Williams believes violated his Eighth Amendment rights. As best the court can tell, he is basing his Eighth Amendment claim of "cruel and unusual punishment" on the conduct of the officers in throwing his tray of food on the floor (which he told them he did not want). But he does not allege that the tray or any of the food touched him or that he was physically injured in any way as a result of the tray being thrown on the floor. Thus, he has failed to plausibly allege an Eighth Amendment excessive force claim, which requires—at a minimum—a "nontrivial" use of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).

Similarly, his complaint does not allege that he ever sought medical attention and was denied it, nor does he allege any other facts that state a claim of deliberate indifference to prison

---

[3] There are cases that have addressed whether a retaliatory action in response to a hunger strike constituted a First Amendment violation. *See, e.g.*, *Miranda v. Swift*, No. 17-04000BLF (PR), 2020 WL 64662396, at *5 (N.D. Cal. Nov. 2, 2020) (granting qualified immunity to defendants as to First Amendment retaliation claim, which was based on a disciplinary charge stemming from either a hunger strike or a refusal to accept meal trays). But Williams has not expressly brought a retaliation claim, and he does not identify any adverse action taken against him other than the tray being thrown on the floor. That action is an insufficient adverse action to support a retaliation claim. *Cf. Ofori v. Fleming*, No. 7:20-CV-00345, 2021 WL 4462922, at *6, 7, 8 (W.D. Va. Sept. 29, 2021) (discussing different types of "actions" insufficient to constitute an adverse action for purposes of a retaliation claim). To the extent he intended to plead a retaliation claim, then, he has not stated a plausible claim.

conditions under the Eighth Amendment. *Cf. Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011) (addressing a claim that prison officials were deliberately indifferent in violation of the plaintiff-inmate's Eighth Amendment rights by failing to move him to the infirmary for the duration of his hunger strikes). His Eighth Amendment claims thus fail.

### D. Fourteenth Amendment Due Process Claims

Similar to his Eighth Amendment claims, it is unclear how Williams believes his due process rights were violated. It appears that he is claiming that the officers' violation of protocol—in giving him a tray he had refused and in falsely recording that he took a tray—somehow violated his due process rights. But even if that conduct violated VDOC's procedures or protocol,[4] a violation of a prison's regulation does not give rise to a constitutional claim. *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) ("[P]rison officials' failure to follow internal prison policies [is] not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation."). Because Williams has not identified a constitutionally protected liberty or property interest that was infringed, his Fourteenth Amendment claims also fails. *See Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) (explaining that to state a procedural due process claim, a plaintiff must first "identify a protected liberty or property interest").

---

[4] Williams points to Operating Procedure ("OP") 841.4, and cites to "sec. 4-K(c1-6)." (Compl. 6.) At least as of the date of this opinion, the publicly available OP with that number is titled "Restorative Housing Units" and does not contain a section that obviously corresponds with the cite Williams gives. It does state that staff "will document and manage inmates who refuse to eat . . . in accordance with Operating Procedure 420.2, *Use of Restraints and Management of Inmate Behavior.*" OP 841.4, § IX(B)(4)(d) (effective July 1, 2023), available at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-841-4.pdf (last visited July 11, 2022).

## III. CONCLUSION

For the reason set forth above, Williams's complaint fails to state a claim and must be dismissed. An appropriate order will be entered.

Entered: July 13, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge